We'll proceed to the next case. Paul Tongay, Workers' Compensation Commission, number 5100351. Counselor, please. Thank you, Your Honor. May it please the Court, Mr. Green. My name is Rand Hale, and I represent Paul Tongay with reference to this matter that is before you. He had filed a claim with reference to an injury to his left shoulder. He indicated in his testimony that on August 5, 2005, he fell off of a ladder at his place of employment and injured his left shoulder. He sought treatment through Gateway Occupational Medicine and was given physical therapy and got the pain settled down and went back to work. Then about a year later, he began having intractable pain again in his shoulder. He eventually ended up going back to his treating doctor, who was Dr. Weimer. And the good and the bad of this case is that we have Dr. Weimer, who had treated him before the injury, and so we have a little bit of view of what his prior condition was. You're proceeding on a theory of an aggravation of a pre-existing condition, right? Well, my response is no. My response is that there was a new injury as a result of the fall in 2005, and we're contending, based on Dr. Weimer's statement, that it was a new injury. It was different than what he saw before, and when he did the surgery, the rotator cuff repair that he did was related to the injury, but all of the other stuff he did, including a slap tear repair and all, didn't have anything to do with this injury. So you're hanging your entire head on the new injury, not pre-existing? That's what I would say. Okay. And the question becomes whether or not the arbitrator's decision was against the manifest way of the evidence. Our contention is that when you look at the doctors that gave opinions relating to this case, the person best able to say whether something was related to a previous problem is the doctor that treated that previous problem, Dr. Weimer. Dr. Weimer, in his deposition, indicated that there was a new problem put on top of what was previously existing. He believed that the rotator cuff repair he did, there was a substantial tear to the rotator cuff. He believed that was related to the fall. He believed that some part of the surgery was unrelated to the fall. All right. Weimer clearly supports your claimant's position. The employer gets Petkovich. Petkovich comes in and gives an opposite opinion. That's correct. So how did the commission, how do you overturn the commission's decision with simply conflicting medical opinions? We have a guy that, a doctor that saw my client on numerous occasions before and after the work-related accident, and our contention is he is better able to give an opinion as to what relates to the prior cause rather than somebody that saw him one time. And yet that's, you would have balanced, that's within the province of the commission to judge the propriety and the believability of the witnesses, correct? But I believe that because of those facts, it was against the manifest way of the evidence for them to rely on Dr. Petkovich, and they should have relied on what Dr. Weimer said. But the manifest way of the evidence, the evidence says, is there any evidence in the record to support the decision of the commission? And the opposing counsel can say, well, there's Petkovich. I understand. And my contention is that's minimal evidence and not nearly as good as the treating doctor said. What did Weimer actually say? Say it again. What did Weimer actually say? Weimer actually said that the rotator cuff tear that he treated was related to the work-related injury. That was related, but the other things were not related. He did complete surgery with reference to the shoulder, and when he first saw him back in 2005, he recommended that a different surgery be done, and that was done as well as the rotator cuff surgery. Did Weimer say that the particular impingement that the plaintiff had could cause the particular type of rotator cuff tear that he eventually suffered? He did not. He did not say that. He indicated that there was a bursal side problem that he treated previously, and that the rotator cuff wear was on the undersurface articular side, and one would not lead to the other. Okay. And our contention is that based on the medical evidence that was presented to the arbitrator, it was against the manifest way of the evidence to find that there was no causal connection between the rotator cuff tear and the work-related accident. Thank you, counsel. Counsel, please. May it please the court. Counsel, my name is David Green. I represent the Appalachee Prairie Farms area in this matter. My work as compensation commission should be affirmed so long as no opposite conclusion is clearly evident. Here are the facts that support the commission's decision. It is not simply a matter of the facts supporting the decision or some evidence of the decision, but clearly the facts weigh heavily in favor of the commission's decision, but that's not the issue before this court. The issue before this court is whether or not there are any facts that support the decision, and here there are. The points which the commission thought were relevant are clear in the record, and that is... Can you speak up a little more for us? The points in the record that support the commission's decision are clearly evident. That is that the employee, Mr. Tonga, had significant left shoulder complaints prior to this accident in August 2005, that he went through a period of treatment shortly after the August 2005 accident, that the two doctors in particular that were treating him, a doctor salesman, after hearing the complaints that Mr. Tonga described, stated in the record that he thought Mr. Tonga was describing complaints consistent with a possible tracheotomy before the date of this accident. The other doctor, Dr. Christopher Knapp, who also treated Mr. Tonga after this accident, stated in mid-October 2005 that Mr. Tonga's complaints had resolved the baseline, and that was what Mr. Tonga was telling him, meaning that my shoulder complaints are the same now as they were before the August 2005 accident, and particularly the fact that the commission was troubled by the fact that Mr. Tonga was seen by Dr. Garces, that's the family physician, that was someone with whom Mr. Tonga had an ongoing relationship, he was seen by Dr. Garces on several occasions from October 2005 until September 2006, for a number of problems, one including a right upper extremity problem, but there are no records of any left shoulder complaints during that time frame. And then, in Dr. Garces' notes, the commission was troubled by the fact that Dr. Garces saw the employee in mid-September 2006 with a history of no shoulder complaints at the onset of one week, and a telephone message in Dr. Weamer's own file that the employee's wife called in saying, about a week later, that shoulder complaints of two weeks duration. The commission was troubled by the fact that Dr. Weamer chose to ignore that evidence, and Dr. Weamer also admitted in his deposition, I thought, that shoulder impingement, the location of where this was, could have possibly caused orthopedic cuff tear, but he was in disagreement on that. He was also in agreement that on the prior MRI in 2004, there was rotator cuff tendinosis or tendinitis, which can progress and can result in rotator cuff tear. And finally, the commission did find Dr. Frank Pekovic was more credible than Dr. Weamer. Those are the salient points. Clearly, it supported the commission's decision, supported by the facts in this case, and I would ask that you affirm the commission's report. Thank you, Counsel. Mr. Butler? Aye, Mr. Chairman. Of course, thank you, Counsel. Of course, we'll take the matter under advisement for disposition.